UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


AMW SPORTS, LLC D/B/A THE
ATHLETE'S FOOT

VERSUS

STATE FARM FIRE AND CASUALTY
COMPANY

CIVIL ACTION

NUMBER 10-651-SCR

# RULING ON MOTION IN LIMINE
# TO EXCLUDE PLAINTIFFS' EXPERT REPORT AND TESTIMONY

Before the court is defendant State Farm's Motion in Limine to Exclude Plaintiffs' Expert Report and Expert Testimony. Record document number 20. The motion is opposed.[1]

The admissibility of expert evidence generally is governed by Rule 702, Federal Rules of Evidence and the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). The district court must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training or education." A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The court should permit only reliable and

---

[1] Record document number 27. Defendant filed a reply. Record document number 53.

relevant expert testimony to be presented to the trier of fact.[2]

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Daubert* set forth an illustrative, non-exhaustive list of factors that may be considered by the district court when determining whether the expert testimony is sufficiently reliable. These factors include whether the theory or technique that forms the basis of the expert's testimony: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a high known or potential rate of error and standards controlling its operation, and (4) is generally accepted within the relevant scientific or technical community. *Vargas v. Lee*, 317 F.3d 498, 500 (5th Cir. 2003). Whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law gives the trial judge broad latitude to determine. *Id.* Plaintiffs, the proponents of the expert evidence at issue, have the burden of demonstrating that their expert is qualified to testify in the field that he is offered and that his

---

[2] *Daubert*, 509 U.S. at 589; 113 S.Ct. at 2795.

opinions are both reliable and relevant.

Plaintiffs seek to offer the expert testimony of Kermith Sonnier. Sonnier prepared a two-page report, dated June 17, 2011,[3] and he was deposed on July 28, 2011.[4] Rule 26(a)(2)(B)(1), Fed.R.Civ.P., required Sonnier to include in his report, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."[5] His report includes one statement which may be an opinion and one that clearly is an opinion. The possible opinion is: "it is important to review all the facts and information submitted by Claimant,"[6] The clear opinion is: "I find the Proof of Loss that was submitted by Claimant is correct in accordance with the policy of insurance and should be timely paid by State Farm." In their opposition memorandum the plaintiffs did not identify any particular opinions from Sonnier's report which they expect him to offer. Rather, the plaintiffs stated "Sonnier has and will opine on the manner in which State Farm adjusted plaintiffs' claim and whether, as a

---

[3] Record document number 27-1, Exhibit A.

[4] Record document numbers 20-3, Exhibit B, and 27-1, Exhibit B (deposition excerpts).

[5] Record document number 27-1, Exhibit A, p. 1.

[6] According to Sonnier's report, the Claimant is plaintiff Abdallah Mizyed. *Id.* The court has already determined that none of the individual plaintiffs, which includes Abdallah Mizyed, was an insured under the State Farm policy. This error is not material to the issue raised by the motion.

3

claims adjuster, he would have recommended that the claim be paid."[7]  But contrary to the plaintiffs' statement of Sonnier's expected testimony, Sonnier explained during his deposition - several times - that he was hired "to either show that it [the claim] was reasonable to deny or not deny."[8]

In the circumstances of this case, Sonnier is not qualified to offer his opinions.  His first (possible) opinion does not require any expert testimony at all – there is no apparent dispute that it is important for an insurance adjuster to review all of the information submitted by the claimant.

As to his second opinion, the methodology he used to support it is fatally flawed.  Sonnier essentially reached his ultimate opinion by ignoring the insured's, i.e. plaintiff AMW Sports, LLC's, business records.  Sonnier simply concluded that the Proof of Loss statement was sufficient.  Unlike the example cited by Sonnier in his report (a tornado destroyed a home), there is no basis to conclude that plaintiff AMW's relevant business records were destroyed during the alleged theft.  Indeed, the evidence shows they were not.

During his deposition, Sonnier stated that he has had special training regarding handling property loss claims, "And when it gets

---

[7] Record document number 27, p. 8.

[8] Record document numbers 20-3 and 27-1, Exhibit B, Sonnier depo. pp. 24-25.  This is the first time during the deposition that Sonnier described what he was retained to do.

down to the accounting parts, we always send them to an accountant."[9] But Sonnier did not work with an accounting firm in this case. Rather, he testified, "I just reviewed documents." When questioned about the methodology used to reach his ultimate opinion in this case, Sonnier testified essentially that plaintiff AMW did give the defendant different amounts two or three times on the Proof of Loss, but he did not question why the amounts were different. When asked whether he should have, Sonnier explained: "Because my job wasn't to be asking him a lot of questions. My job was to review this."[10] His statement was not an offhand comment. Sonnier was later questioned about whether he matched up the invoices and receipts with the allegedly missing items. He answered:

> A. No. I wasn't asked to do all that.
> My -- My job was to look at this here and see how it would be handled if I was the claims adjuster, what kind of things would I ask for, what would I -- and if I thought State Farm did the right thing or not do the right thing.[11]

If it is not already apparent that Sonnier reached his ultimate opinion essentially by just accepting the Proof of Loss, Sonnier confirmed this in his response to a series of questions:

Q. Okay. So that's based on what the claimant told

---

[9] *Id.* at 48.

[10] *Id.* at 81-82.

[11] *Id.* at 95-96.

5

>           you, not necessarily what you verified through the
>           records; is that true?
> A.    That's correct.
>           And plus, you had this here. You had backup here.
>           I was looking at it, if I was an adjuster, if I
>           would have looked at this here and that there, with
>           a Proof of Loss, what I would have done.
>           Then I would have started looking to compare
>           numbers.
> Q.    Okay. But you would have -- as an adjuster, you
>           would compare numbers, but you didn't do that --
> A.    I wasn't asked to do that here.
> Q.    Okay.
> A.    I was -- I was asked to give my [ ][12]

Sonnier later again admitted that he did not go through all of the documents submitted to State Farm, line by line, to determine the amount of the loss. He stated he could have done that, but again stated, "I wasn't asked to do that."[13]

Plaintiffs have not shown that Sonnier's methodology is generally accepted in the insurance industry to determine whether to pay a substantial business or commercial loss claim when the insured has invoices and receipts which can be compared to what is listed in the Proof of Loss. Defendant has convincingly shown that the methodology Sonnier actually used to reach his ultimate opinion is fatally flawed in the circumstances of this case, because his methodology excluded evaluation of significant relevant and available information. He essentially relied only on what was in

---

[12] *Id*. at 97. The end of Sonnier's answer would be on p. 98, but that deposition page was not submitted by either the plaintiffs nor the defendant.

[13] *Id*. at 106.

the Proof of Loss even though the invoices and receipts were available to compare with what was listed in the Proof of Loss.

Accordingly, State Farm's Motion in Limine to Exclude Plaintiffs' Expert Report and Expert Testimony is granted.

Baton Rouge, Louisiana, January 9, 2012.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE